# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KEVIN RAY PARKER, ) | |
| ) | |
| Plaintiff, pro se, ) | **MEMORANDUM OPINION** |
| ) | **AND RECOMMENDATION** |
| v. ) | |
| ) | 1:08CV416 |
| PATRICIA L. CHAVIS and ) | |
| JAMES PIERCE, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on a motion for summary judgment filed by Defendants (docket no. 15). Plaintiff has responded in opposition to the motion; therefore, the matter is ripe for disposition. Because the parties have not consented to the jurisdiction of the magistrate judge, the motion must be dealt with by way of recommendation. For the reasons stated herein, the court will recommend that Defendants' motion for summary judgment be granted.

**STATEMENT OF THE CASE**

Plaintiff Parker, a former inmate in custody in the North Carolina Department of Corrections ("DOC"), filed this action on June 20, 2008, alleging that his constitutional rights were violated as a result of a prison discipline proceeding (docket no. 2). Plaintiff named two DOC officials, Patricia L. Chavis and James

Pierce, as Defendants.[1]  On October 31, 2008, Defendants filed a motion for summary judgment (docket no. 13).

**STATEMENT OF FACTS**

Plaintiff alleges that in May 2007 he was punished in disciplinary proceedings for describing Correctional Officer Jason Capps as a jerk in a written prison grievance.  Plaintiff alleges that he was scheduled for transfer to a minimum custody facility at the time of the grievance; but, as a result of his statement, he was denied the transfer and spent another year in a medium custody facility, with restrictions on visitation, canteen, and telephone privileges.  Plaintiff appealed the disciplinary conviction to Hattie Pimpong, who upheld it.  Plaintiff also submitted grievances regarding this issue on October 31, 2007, and January 21, 2008, but they were rejected because they were considered to be improper appeals of disciplinary action.  Plaintiff then appealed up the chain of command to Defendant Chavis.  By the time of this appeal, Plaintiff had been transferred and was in another region.  Defendant Chavis informed Plaintiff that he was in Defendant Pierce's region.

Plaintiff alleges, at great length, that his claim is based on the First Amendment and Fourteenth Amendments and that Defendants were aware of his

---

[1] At the time the complaint was filed, Defendant Chavis was Director of the South Central Region of the DOC Division of Prisons, and Defendant Pierce was Director of the Piedmont Region of the DOC Division of Prisons.

2

rights under *Bradley v. Hall*, a Ninth Circuit case. 64 F.3d 1276 (9th Cir. 1995). Plaintiff requests injunctive relief barring DOC from disciplining inmates for the contents of administrative grievances and providing relief to the inmates who had previously been so disciplined. Plaintiff also seeks monetary damages in the amount of $100,000 from each Defendant, punitive damages in the amount of $500,000 from each Defendant, and a lien on the property of each defendant. Plaintiff also alleges that he suffered mental anguish as a result of the actions of Defendants. On August 26, 2008, Plaintiff filed a "Supplement to Original Complaint" in which he sought to "clarify the invoked liberty interest in the original complaint," alleging that his claims were for (1) violation of his constitutional right to seek redress of his grievances; (2) violation of his constitutional right of access to the courts; and (3) retaliatory disciplinary action taken against Plaintiff by Officer Capps, who is not named as a party (docket no. 5).

Both Defendants submitted affidavits in support of their motion for summary judgment. In her affidavit, Defendant Chavis states that she first became aware of Plaintiff's claim of wrongful discipline on or around June 26, 2007, when Plaintiff's mother wrote a letter of complaint to several DOC officials, including Secretary of Correction Theodis Beck. (Affidavit of Patricia Chavis ¶ 6.) A few days later, Plaintiff's mother phoned Defendant Chavis directly; Chavis responded by writing to Plaintiff on November 7, 2007, informing him that she had not received an earlier letter and that if his complaint involved a staff matter, she could not provide any

information "because personnel actions are confidential." (*Id.* ¶ 7.) On November 11, 2007, Plaintiff wrote directly to Defendant Chavis, claiming his constitutional rights had been violated and attaching a copy of *Bradley v. Hall*. Plaintiff requested that Defendant Chavis dismiss and expunge the two disciplinary infractions, reverse the punishments, and promote him to honor grade. (*Id.* ¶ 8.)

Defendant Chavis instructed her staff to respond to Plaintiff's letter and explain that custody status changes were the responsibility of the local facility superintendent and that Plaintiff should discuss a promotion with his case manager. (*Id.* ¶ 9.) Defendant Chavis then received a copy of a letter from Plaintiff to United States Representative Bob Etheridge. (*Id.* ¶ 10.) On January 20, 2008, Plaintiff's sister wrote to Defendant Chavis, making requests similar to those made in Plaintiff's November 7, 2007, letter. (*Id.* ¶ 11.) On January 21, 2008, Plaintiff wrote again to Defendant Chavis, making similar requests for expungement and threatening to sue. (*Id.* ¶ 12.) On January 28, 2008, Defendant Chavis wrote to Plaintiff and explained that she did not have authority to take the actions he requested. (*Id.* ¶ 13.) On February 18, 2008, Defendant Chavis wrote to Plaintiff to explain that *Bradley v. Hall* did not apply in North Carolina and that DOC policies and procedures were reviewed by the North Carolina Attorney General for compliance with governing law. (*Id.* ¶ 14.)

According to Defendant Chavis, she does not have administrative authority over disciplinary hearings or appeals. She has no supervisory control over the Chief

Disciplinary Hearing Officer and no authority over custody promotions for individual inmates. (*Id.* ¶ 15.) She also has no independent authority to make or change DOC policies and procedures. (*Id.* ¶ 16.)

Defendant Pierce also submitted an affidavit in which he outlined his duties as a regional director for the DOC. On March 19, 2008, he received a letter from Plaintiff complaining about the discipline he received. Plaintiff asked Defendant Pierce to overrule the ruling of Chief Disciplinary Officer Hattie Pimpong by which she denied Plaintiff's appeal. Defendant Pierce states that he does not have administrative authority in the matter of disciplinary hearings or appeals and specifically has no authority to overturn final rulings on inmate's appeals of disciplinary convictions.

**DISCUSSION**

Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Analysis

Plaintiff contends that the statement he made in his written grievance (in which he called Officer Capps a "jerk") was protected First Amendment speech and thus he was unconstitutionally punished, solely for having made that statement. In support of his claim, Plaintiff cites *Bradley*, a Ninth Circuit case. In *Bradley,* the plaintiff sued the director of the Oregon Department of Corrections for punishing him for the use of hostile, sexual, abusive, or threatening language in a grievance. Specifically, Bradley argued that subjecting him to discipline for the use of disrespectful language in a grievance violated his right to petition for redress of grievances, and therefore rendered the regulation prohibiting such conduct

6

unconstitutional. In examining the constitutionality of the regulation, the Ninth Circuit noted that it has been clearly established for some time that prisoners have a constitutional right of access to the courts. *Bradley*, 64 F.3d at 1279 (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The Court also noted that "[a] prisoner's right to meaningful access to the courts, along with his broader right to petition the government for a redress of his grievances under the First Amendment, precludes prison authorities from penalizing a prisoner for exercising those rights." *Id.* The Ninth Circuit further found that because prisoners are required to exhaust administrative remedies before seeking relief in federal court, a prisoner's "fundamental right of access to the courts hinges on his ability to access the prison grievance system." *Id.*

In finding the Oregon regulation unconstitutional, the Court was unpersuaded by the defendants' argument that "punishing a prisoner for the content of his grievance does not burden his ability to file a grievance." *Id.* Rather, the Court found that "[f]rom the prisoner's point of view, the chilling effect is the same . . . the prisoner risks punishment for exercising the right to complain. Without question, the application of the ODOC disrespect regulations to Bradley's written grievance impacts his constitutionally protected rights under the Fourteenth and First Amendments." *Id.* The Court went on to analyze the regulation under the standards set forth in Turner v. Safley, 482 U.S. 78, 79 (1987), and found that the regulation

7

was an exaggerated response to legitimate concerns, and thus invalid as applied to prison grievances which contain disrespectful language.  *Bradley*, 64 F.3d at 1281.

As noted by Defendants, *Bradley* is not controlling caselaw in this circuit.  There is simply no Fourth Circuit case which holds that a prison regulation such as the one at issue here is unconstitutional.  The purpose of the prison grievance procedure is to bring issues to the attention of prison officials, not to make offensive or disparaging remarks about individuals, nor to air personal or petty opinions and disagreements.  An inmate's right to access the courts is not threatened by a regulation requiring him to use non-abusive language in his grievance.  I recommend, therefore, that the court find that Plaintiff's First Amendment rights were not violated by the disciplinary proceeding against him.

Plaintiff also has not met his burden at the summary judgment stage to show that Defendants' alleged unconstitutional acts were in fact the cause of his injury.  Plaintiff complains that he was injured as a result of disciplinary action for disrespectful language he used in a grievance.  It is well established that liability under Section 1983 is based on a defendant's personal involvement in the alleged constitutional violation.  *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1997).  The injury of which Plaintiff here complains is the discipline he received for using disrespectful language in the grievance he filed.  There is no evidence which shows that either Defendant was involved in the disciplinary proceeding.  The material submitted by Defendants clearly shows that they had no authority to enact or amend

the prison policy in question.  Their sole personal connection to this action is that, after the disciplinary proceeding was concluded and the punishment was upheld on appeal, they received and responded to letters from Plaintiff and his family members.  They did not take any action with regard to the discipline imposed on Plaintiff.  Plaintiff's later correspondence with Chavis and Pierce does not change the fact that Defendants were not involved in the disciplinary proceeding.  As such, Plaintiff has failed to meet his burden on showing personal involvement, and therefore summary judgment should be granted to Defendants.

Plaintiff suggests that he has sued Defendants Chavis and Pierce as supervisors.  He has, however, not alleged any basis for supervisory liability.  The doctrine of respondeat superior, under which a supervisor may be held liable for the acts of his subordinates, generally has no application in Section 1983 cases.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693-94 (1978);  *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  To hold a supervisor liable for a constitutional injury inflicted by a subordinate in Section 1983 actions, the following three elements must be found: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular

9

constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Establishing the existence of a persuasive and unreasonable risk requires evidence that the conduct is widespread "or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

Here, Plaintiff has failed to allege or show that Defendants had either actual or constructive knowledge that any of their subordinates were engaged in conduct posing a pervasive and unreasonable risk of constitutional injury to Plaintiff. There is no Supreme Court or Fourth Circuit precedent holding that regulations such as the ones at issue here violate an inmate's constitutional rights. Moreover, Plaintiff was only disciplined once under this prison regulation; accordingly, Plaintiff cannot show widespread offensive practices. Finally, with regard to Plaintiff's claim that the regulation in question chills his right of access to the courts, I am unpersuaded. Indeed, Plaintiff's right to file grievances was not abridged; he just must not use disrespectful language in doing so.

Defendants have also asserted that they are entitled to qualified immunity. The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

*Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *receded from by*, *Pearson v. Callahan*, 129 S. Ct. 808 (2009). A court has discretion to decide which step of the two-pronged test to analyze first. *Pearson*, 129 S. Ct. at 821.

Here, Plaintiff has simply not presented any evidence which shows that there is a genuine issue of material fact as to whether his constitutional rights were violated. There is, quite simply, no controlling authority in this jurisdiction that would have put Defendants on notice that any of their actions violated Plaintiff's rights. Moreover, because there is no evidence showing Defendants were personally involved in the disciplinary proceeding involving Plaintiff, it is unnecessary for the court to even reach the qualified immunity question.

Plaintiff also seeks an injunction barring DOC from disciplining inmates for the content of administrative grievances and providing relief to inmates previously disciplined. It is well established that an inmate cannot seek injunctive relief on behalf of other inmates. Moreover, I note that Plaintiff's claims for injunctive relief are moot because he has been released from DOC custody. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff's claims for injunctive and declaratory relief should therefore be dismissed on account of mootness.

**CONCLUSION**

For the reasons stated herein, **IT IS RECOMMENDED** that the motion for summary judgment by Defendants (docket no. 15) be **GRANTED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

September 21, 2010